IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GEORGE A. DONNER and<br>CHRISTINE L. DONNER<br>    Plaintiffs,<br><br>v.<br><br>ALCOA INC., et al.,<br><br>    Defendant. | Case No. 10-CV-0908-W-HFS |

**ORDER**

Before the court is the motion of defendant, Alcoa, Inc., for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). Plaintiff, George A. Donner, commenced this action for personal injury in the Circuit Court of Jackson County, Missouri, alleging strict liability and negligent design defect, and strict liability and negligent failure to warn. Plaintiff, Christine L. Donner, asserted a claim for loss of consortium.[1] On September 16, 2010, Alcoa removed the action to this court based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Shortly thereafter, Alcoa filed a motion for judgment on the pleadings. For the reasons set forth below, I conclude that the warning issue should not be summarily rejected on the pleadings.

Background

Plaintiff, George Donner, was employed by Western Forms, Inc. from March of 1977, thru

---

[1] The plaintiffs have also asserted these claims against John Doe defendants 1-20.

December of 2004. (Complaint: ¶ 13). Western Forms manufactures aluminum forms and related accessories for the pouring of concrete walls and other concrete structures, and its employees cut, saw, grind, weld, and otherwise process aluminum sheet stock in order to create the aluminum forms. (Id: ¶¶ 14-15). Plaintiff initially worked as a grinder, using a grinding machine to grind the "weld spots" off aluminum products; he also worked as a machine operator, welder, supervisor, manager, and eventually as a vice president and general manager. (Id: 22). After retiring from Western Forms, plaintiff owned and operated a construction business. (Id: ¶ 24).

In February of 2007, plaintiff developed a violent coughing attack, dizziness, and exhaustion, and after seeking medical treatment underwent a surgical lung biopsy in April of 2007. (Id: ¶¶ 25-26). The biopsy revealed deposits of aluminum particles in his lung tissue and he was diagnosed with pulmonary fibrosis. (Id: ¶¶ 27-28). Plaintiff ceased work in the spring of 2007, and underwent a double lung transplant in October of 2008; he states that he continues to suffer from debilitating conditions. (Id: ¶¶ 31-33).

Discussion

Standard of Review for Judgment on the Pleadings

Rule 12(c) provides that, after the pleadings are closed but a reasonable time prior to trial, a party may move for judgment on the pleadings. Cameo Quality Homes of Woodbury, Inc. v. Thuringer, 2007 WL 1425490 * 3 (D.Minn.). On this motion, a court applies the same standard of review as for a motion to dismiss for failure to state a claim under Rule 12(b)(6). Id. When examining this question, the pleadings are examined with all reasonable inferences in favor of the

nonmoving party. Id. A court may only examine the pleadings and matters incorporated by reference. Id.

Judgment on the pleadings is appropriate where the pleadings pose no material issues of fact and the moving party is entitled to judgment as a matter of law. Id. This outcome is not appropriate unless it appears, beyond a doubt, that the nonmoving party can prove no set of facts which entitle it to relief. Id. Notwithstanding this liberal standard, the nonmoving party must still allege "sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." Id. Put another way, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." Id.

Strict Liability for Design Defect

Alcoa contends that plaintiff's claim for design defect fails because as a raw material, aluminum, cannot be defectively designed. In support of its contention, Alcoa notes that under 42 U.S.C. § 6903(35), aluminum is defined as a raw material, similar to sand, gravel, and kerosene which are not defectively designed.[2] Alcoa finds support for its argument in an Eighth Circuit opinion that considered whether defendants Du Pont and Durafilm could be held liable for injuries that occurred from implants made of polytetra-fluoroethylene powder and fiber "PTFE resin" and

---

[2]Kerosene is a thin, clear liquid formed from hydrocarbons, and obtained from the fractional distillation of petroleum between 150° and 275° C. (Wikipedia). Fractional distillation is the separation of a mixture into its component parts, or fractions, such as in separating chemical compounds by their boiling point by heating them to a temperature at which several fractions of the compound will evaporate. (Wikipedia). Gravel, though initially from natural sources, is then intermixed with sand or clay to make bank gravel, or the limestone crushed stone made from a mixed grade of mostly small crushed stone in a matrix of crushed limestone powder. (Wikipedia).

fluorinated ethylene propylene film "FEP film." In Re TMJ Implants Products Liability Litigation, 97 F.3d 1050, 1052 (8th Cir. 1996). The implants were prosthetic devices used to correct temporo-mandibular joint "TMJ" disorders of the jaw, and the gravaman of the complaint was that the implants failed, abrading the surrounding bone and causing pain to the wearer. Id. Du Pont manufactured some of the raw materials including PTFE resin and FEP film used in making the implants, and sold them under the Teflon trademark. Id. Durafilm distributed the FEP film, but did not manufacture it. Id.

The Restatement (Second) of Torts § 402A (1965) imposes strict liability on sellers of "unreasonably dangerous" products. In re TMJ Implants, at 1055. A product may be considered "unreasonably dangerous" because of (1) a manufacturing defect, (2) a design defect, or (3) a failure to warn of dangers in the product's use. Id, at 1055. Under Missouri law, a plaintiff seeking to recover in strict liability for defective design must prove that: (1) the product was defective and unreasonably dangerous when put to a reasonably anticipated use and (2) the plaintiff suffered damage as a direct result of the defect. Sperry v. Bauermeister, Inc., 4 F.3d 596, 597-98 (8th Cir. 1993); see also, Welsh v. Bowling Elec. Machinery, Inc., 875 S.W.2d 569, 572 (Mo.App. S.D. 1994); citing, R.S.Mo. § 537.760. A supplier is not liable unless the product is defective at the time it leaves the supplier's control and enters the stream of commerce. Id, at 598. To recover under a cause of action for negligent design, a plaintiff must prove that the defendant breached its duty of care in designing the product and that this breach was the proximate cause of the plaintiff's injury. Id. For the following reasons, plaintiff here cannot recover for product defect under either theory against this defendant.

The plaintiffs in In re TMJ Implants argued that although FEP film had many safe industrial uses and was not inherently dangerous for all uses, it was defectively designed for its "reasonably

foreseeable" use in implants. Id, at 1055. The court rejected that argument and held that suppliers of inherently safe "component parts are not responsible for accidents that result when the parts are integrated into a larger system that the component part supplier did not design or build." Id. The court, in reliance on Sperry v. Bauermeister, Inc., 786 F.Supp. 1512, 1517 (E.D.Mo. 1992), concluded that it made no difference whether FEP film was characterized as a "component part" or a "raw material" for purposes of a strict liability claim. Id, at 1055 n. 6. After reviewing the record, the court was convinced that the undisputed facts showed as a matter of law that the defect was in the overall design of the implants and not in the FEP film. Id, at 1056.

In Sperry, a case relied on by the court in In re IMJ Implants, a spice mill operator was injured and had three fingers amputated while attempting to manually clean the mill brought a products liability action against the manufacturer of the spice grinding and dust control mechanism. Sperry, 4 F.3d at 596. The manufacturer sold and delivered the milling system to plaintiff's employer, Spicecraft, without an auger[3] or any other parts located below the airlock, and the plaintiff was injured when he reached his hand into a lower chamber to clean out spices caked on the sides of the chamber. Id, at 597. The court held that the plaintiff could not recover under either a strict liability or negligent design defect theory because there was no evidence that the defendant manufacturer supplied or designed a defective product. Id., at 598. The court found that it was the employer's decision to install an electrical system that contained no warning light and which included a manual override of the interlock system. Id. Ultimately the court concluded that, under Missouri law, suppliers of nondefective component parts are not responsible for accidents that result when the parts are integrated into a larger system that the component part supplier did not design

---

[3]An auger is a device which conveys the product from the hopper to the sifter. Sperry, at 597.

or build. Id.[4]

Plaintiff concedes that although, arguably, aluminum begins as a raw material found in ores mined from the earth, the aluminum sheets Mr. Donner worked on had been refined and smelted through electrolytic reduction, and therefore, no longer a raw material. (Suggestions in Opposition: pg. 4). This argument does not bolster plaintiff's claim for as noted in Sperry v. Bauermeister, Inc., 786 F.Supp., at 1517; Sperry v. Bauermeister, Inc., 4 F.3d., at 598; and In re TMJ Implants, 97 F.3d., at 1055, it makes no difference whether the complained of product is characterized as a "component part" or a "raw material." In re TMJ Implants, at 1055. The critical inquiry focuses on determining the reason why the component part turned out to be unsuitable for use in the finished product. Id., at 1056. "If the failure was due to a flaw in the component part, then the component part is itself defective and the cause for the assembled product being defective;" and the component part maker may be held strictly liable. Id (internal citation omitted). However, "[A] plaintiff must present evidence from which a jury could find that any 'defect' was in the 'design' of the component part, not the final product." Id (internal citation omitted). This plaintiff has failed to do in the case at bar.

According to plaintiff, unsuitability for use is demonstrated by the fact that it was reasonably foreseen, and even intended, by Alcoa that the aluminum sheets would be cut, sawed, and ground into aluminum particles which if inhaled could lead to lung disease. (Suggestions in Opposition: pgs. 2, 5). This argument fails because Alcoa as the manufacturer of an inherently safe product, i.e.

---

[4]This was the conclusion reached by the district court in an earlier decision involving these parties, where defendant/third-party Baumsieter alleged that plaintiff's injury was caused by a defective rotary airlock manufactured by third-party defendant Micron Powder Systems. Sperry v. Baumeister, 786 F.Supp. at 1513. Micron manufactured and supplied component parts for various types of machinery including an airlock supplied to Spicecraft, the employer of the injured plaintiff. Id., at 1514. The plaintiff did not allege, and the court did not find the airlock to be defective, and held, that as a matter of law, that Micron could not be held liable for the incorporation of its non-defective component part into a milling system defectively designed. Id., at 1518.

aluminum sheets, is not liable for injuries sustained where as here there is no evidence of a manufacturing or design defect in the component itself. In re TMJ Implants, 97 F.3d., at 1057. Here, as stated by plaintiff, injury to his lungs was sustained as the result of exposure to "aluminum particles." (Complaint: ¶¶ 2-3). Although plaintiff attempts to characterize aluminum as a defective product in and of itself, the aluminum sheets were "otherwise processed and manipulated" by plaintiff and his co-workers through cutting, sawing, and grinding, resulting in the aluminum particles found in his lung tissue. (Id: ¶¶ 15, 17).

"While manufacturers of inherently dangerous raw materials will be held liable for injury caused by their product, courts have treated differently manufacturers of inherently safe components when the final assembly, rather than a manufacturing or design defect in the component itself, renders the component dangerous." In re TMJ Implants, at 1057 (citation omitted). Indeed, "[t]he alleged foreseeability of the risk of the finished product is irrelevant to determining the liability of the component part manufacturer because imposing such a duty would force the supplier to retain an expert in every finished product manufacturer's line of business and second-guess the finished product manufacturer whenever any of its employees received any information about any potential problems." Id.

Under the component-parts doctrine, it is undisputed that Alcoa did not participate in the manipulation of the aluminum sheets into the particles that subsequently resulted in plaintiff's injury, and, it is therefore not liable for any ensuing defects. Davis v. Goodyear Tire & Rubber Company, 2010 WL 1710001 (E.D.Ark.).

Failure to Warn

To recover under Missouri law in strict liability for failure to warn, a plaintiff must prove

that (1) the defendant transferred a product in the course of its business; (2) the product was used in a manner reasonably anticipated; (3) the product was unreasonably dangerous when put to a reasonably anticipated use without knowledge of its dangerous characteristic; and (4) the plaintiff's damage was a direct result of the product being sold without an adequate warning. Sperry v. Bauermeister, 4 F.3d., at 598. Missouri also recognizes a cause of action for negligent failure to warn, and an essential element under both theories is product failure or malfunction. Id.

The Sperry court held that the plaintiff could not recover under either theory because the record contained no evidence that the spice grinding and dust control components supplied by Bauermeister were defective or that they malfunctioned. Id., at 599. Rather, the court found that the plaintiff's injury was the result of the failure of the employer to include an interlock safety or warning light - not, in the overall design of the mill. Id. Here, Alcoa claims it did not have a duty to warn end-users, plaintiff and his employer, of the finished product about dangers that may be associated with aluminum particles. In re TMJ Implants, 97 F.3d at 1058, the theory is that a failure to warn claim brought against suppliers of multi-purpose components is precluded by the same raw material/component part supplier analysis that forecloses design defect claims. Id.

Although TMJ is a decision from my appellate court it is by no means a controlling authority in this case. It simply serves the modest role of predicting State law, in this situation the law of Minnesota. One of the members of the panel, Judge Heaney, dissented, and supposed Minnesota would reach a different result. It seems that Minnesota did reach a different conclusion in Gray v. Badger Mining Corp., 676 N.W.2d 268 (Minn. 2004); Compare, Haase v. Badger Mining Corp., 669 N.W.2d 737 (Wis.App. 2003), Genereux v. American Beryllia Corp., 577 F.3d 350 (1st Cir. 2009). In the Gray case, involving the bulk supplier of silica sand, where there was alleged to be a failure to warn of the dangers of breathing silica dust, the Supreme Court of Minnesota reversed a grant of

summary judgment, holding there was a material issue as to whether the worker was a sophisticated end user, whether his employer was a sophisticated intermediary, and whether the bulk supplier's warning to the employer was adequate. The issues in cases of this nature can become somewhat complex, and the ultimate issue of due care is typically one for the fact-finder. See, Vondra v. Chevron U.S.A., Inc., 652 F.Supp.2d 999 (D.Neb. 2009). Where the Missouri Courts would come down is not entirely predictable, and may well depend on how facts developed in discovery may point the way.[5]

It is unusually hazardous to dismiss without discovery, and I will not do so here.

Insofar as the motion to dismiss (ECF doc. 7) is directed toward a failure to warn, the motion is therefore DENIED.

/s/ Howard F. Sachs  
HOWARD F. SACHS  
UNITED STATES DISTRICT JUDGE

January  21 , 2011

Kansas City, Missouri

---

[5]The use of a mask, for example, is not referred to in pleadings or in the defense. Whether generally recommended or used is unknown. Whether Alcoa's level of sophistication is greater than that of plaintiff's employer is also unknown, although perhaps likely. Assuming the soundness of Vondra, this case deserves significant development.